Harper, J.
delivered the opinion of the Court.
The principal question involved in this case is, whether the action of replevin can be supported against the landlord by the tenant, who has tendered the rent in arrear after the distress levied, but before the goods are removed, or impounded; sueh is *170 the state of facts in this case made out by the evidence; and the pleadings make the issue accordingly.
There can be no question but that the detention of the goods after such a tender is unlawful. For if the landlord come to dis-train the goods of his tenant for rent, the tenant may before distress tender the arrears; and if distress be afterwards taken, it is illegal. So if the landlord have distrained, and the tenant makes a tender of the arrears before the impounding of the distress, the landlord ought to deliver up the distress; and if he does not the detainer is unlawful. Gilb. Repl. 39, 40. The only question is respecting the remedy.
It has been thought, that though such detention be unlawful, the action of detinue is the only proper remedy, and not replevin, which only applies where there has been a tortious taking. This expression is drawn from some of the elementary books: as in Selw. Ni. Pri. 1141. “ But if the distress has been made, and before impounding, the arrears are tendered, then the detain-er only is unlawful, and the tenant must bring detinue.” And in 1 Sellon’s Pr. 317. “ But if the distress were rightfully taken, the plaintiff cannot plead tender of rent and costs in bar of an avowry for rent in any case, unless the distress were made of com, grass, &c. growing, &c.” Although the contrary might be inferred from 1 Sellon, 316. “ To an avowry for damage feasant in replevin, tender must be pleaded to have been made before impounding, <&e.”
I suppose that Selwyn, in the passage quoted, drew a wrong inference from what is said by Lord Coke in the Six Carpenters’ case: 8 Rep. 147, to which he refers: “ Note, reader, this difference, that the tender upon the land before the distress, makes the distress tortious; tender after the distress and before impounding, makes the detainer, and not the taking wrongful; tender after the impounding, makes neither the one nor the other wrongful; for then it comes too late, because then the cause is put to the trial of the law, to be there determined. But after the law has determined it, and the avowant has return irreplevisable, yet if the plaintiff makes him a sufficient tender, he may have an action of detinue for the detainer after.” It seems plain enough from this passage, that it is only after the actual impounding, that the tenant on making tender is put to the action of detinue.
*171 To the same effect expressly is the authority of Chief Baron Gilbert in his treatise on Replevin, 63; where after speaking of the defendants avowing in the case of beasts damage feasant, he says, “ To which the plaintiff in replevin pleads, that after the taking, and before the impounding, he made a sufficient tender; and thereupon it shall be tried by a jury whether the tender was sufficient, and if it be found so, the plaintiff in replevin shall have damages for such unlawful detention.” The like law and the like reason applies, so far as I can perceive, to the case of rent in arrear. The case of Anscomb v. Shore. 1 Camp. 285, is a further authority to the same point. That was an action on the case for detaining cattle after tender of amends; and it was held, that if the tender were made before the impounding, replevin was the proper action; if not made till afterwards, the action on the case could not be supported.
In the present case, if the landlord himself had been present when the distress was levied, and the tender had been made to him, nothing would seem more just and reasonable, than that he should be liable to this action for his wrongful detainer; and that the tenant should not be driven to the action of detinue, remaining out of possession of his goods, But the tender was made to the bailiff; the landlord was not present, and did not command, or authorize the wrongful act of the bailiff. And it was argued, that the tender to the bailiff was not sufficient; and that it would be unreasonable, that the landlord should be answerable for an act of which he knew nothing, and to which he never assented. And the eases in which it 1ms been held that á master is not liable in trespass for an act of wilful wrong, done by the servant in his employment, which he did not authorize, were relied on as analogous to the present
It is laid down indeed in the authorities, that a tender must be made to the lord himself, and that tender to the bailiff is not sufficient: Gilb. Repl. 60. Though Gilbert adds a quaere, whether if the lord be not present, and the bailiff be the usual receiver of the lord, that will not be a proof of sufficient tender .of amends to the lord himself. In Bac. Abr. Tender E. it is said, that tender of amends to the bailiff, in the case of beasts distrained damage feasant, is not good; and to that case alone I think the rule must be restricted. To that case Gilbert evidently has reference, and the authorities cited by him are of that character.
*172 In the case of 'beasts damage feasant, the tender must be made to the person; but it is clear, on authority, that a tenant is only bound to make tender on the land: It would seem to follow, that if the lord himself does not come upon the land, but sends his bailiff to make distress, the tender to the bailiff must be sufficient. So it is said by Lord Coke in the Six Carpenters’ case, just before the passage previously quoted, “that, if the lord or his bailiff comes to distrain, and before the distress the tenant tenders the arrears, upon the, land, then the distress taken for it must be tortious: 8 Rep. 147, a. The case of Fields v. Mitchell, 6 Esp, N. P. C. 71, is an instance of an action sustained against the landlord, for the irregular conduct of his bailiff in taking an excessive distress, although there was no surmise that the landlord authorized, or assented to it. If the landlord will not come himself to receive the tender, I see nothing unreasonaable in holding him answerable for the conduct of a bailiff of his own selection, and the tenant might be subjected to much greater hardship, if he were not so.
With respect to the former opinion of this Court which is supposed to decide the case, nothing more was intended to be decided, than that improper evidence was admitted against the landlord Blain, and that he was made responsible" to an undue extent for the conduct of the bailiff Green. This 1 think plain from the whole scope of the opinion, though detached expressions might seem to bear a different meaning. Indeed the demurrers to the second and third pleas are overruled, and it is said that if they could be supported by evidence, they are good pleas. This could not refer to the case of Green, against whom the former verdict was established. The motions for a nonsuit,.new trial, and in arrest of judgment, are dismissed.
Motion refused.